UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRI BIEGAS,

        Plaintiff,

v.

QUICKWAY CARRIERS, INC. and
QUICKWAY DISTRIBUTION SERVICES,
INC.,

        Defendants.

_____/

Case No. 05-73616

Honorable Nancy G. Edmunds

**ORDER (1) GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S GROSS NEGLIGENCE CLAIM [41], (2) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S RECKLESS DRIVING CLAIM [41] AND (3) GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S COMPARATIVE NEGLIGENCE [42]**

Pending before this Court are two motions from Defendants,[1] both filed on September 1, 2006.  First, Defendants move (1) to dismiss Plaintiff's claim of gross negligence, and (2) for summary judgment on Plaintiff's claim for reckless driving.[2] [41] Second, Defendants move for partial summary judgment on the issue of Plaintiff's comparative negligence as to the remaining claims. [42]  Plaintiff's lawsuit under the Michigan Wrongful Death Act, Mich. Comp. Laws § 600.2922, arises out of a fatal

_____

[1]"Defendants" refers collectively to Defendant Quickway Carriers, Inc. and Defendant Quickway Distribution Services, Inc.

[2]While styled as a motion to strike, Defendants seek relief under Rules 12(b)(6) and 56(c) of the Federal Rules of Civil Procedure, so this is actually a motion to dismiss and for summary judgment.

1

automobile accident between a truck driven by one of Defendants' drivers and Plaintiff's decedent, and therefore also implicates Michigan No-Fault Insurance law, Mich. Comp. Laws § 500.3135.

In support of the instant motions, Defendants argue that (1) Michigan law no longer provides a claim for gross negligence, with the exception of certain statutory provisions, none of which are applicable here, (2) there is no issue of material fact that Defendants' employee was not driving recklessly at the time of the accident, and (3) there is no issue of material fact that Defendants' driver was less than 50% at fault in this accident.  Plaintiff disputes all three assertions.  For the reasons set forth below, the Court GRANTS both of Defendants' motions in their entirety and DISMISSES all of Plaintiff's claims arising under theories of gross negligence or reckless driving.  As a result, Plaintiff's remaining claims sound only in common law negligence and Plaintiff is not entitled to noneconomic damages.

## I.  FACTS

At approximately 9:30 p.m. on July 13, 2005, Plaintiff's decedent, Richard Biegas,[3] died in an accident on eastbound I-96 in Livonia, Michigan when he was struck by a passing tractor trailer.  (Pl.'s Resp. to Strike at 1.)[4]  Lonnie Dailey, a driver for

---

[3]When used in the facts section of this Order, "Plaintiff" refers to the decedent Richard Biegas, and not the personal representative of his estate.

[4]With regards to Defendants' motion to strike, (Docket No. 41) Defendants' motion will be referred to as "Defs.' Strike Mot.," Plaintiff's response to this motion (Docket No. 48) will be "Pl.'s Resp. to Strike," and Defendants' reply (Docket No. 50) will be "Defs.' Strike Reply."  For Defendants' motion for partial summary judgment, (Docket No. 42) Defendants' motion will be referred to as "Defs.' Summ. J. Mot.," Plaintiff's response to this motion (Docket No. 47) will be "Pl.'s Resp. to Summ. J.," and Defendants' reply (Docket No. 51) will be "Defs.' Summ. J. Reply."  All cited facts come

2

Defendants was driving the truck that hit and killed Plaintiff.  (*Id.*)  Plaintiff owned a concrete removal company named B.J. Haggerty Trucking, and was driving a company dump truck towing a trailered backhoe immediately prior to the accident.  (Defs.' Strike Mot. at 1.)  One of Plaintiff's employees, Nick Cohen, was riding in the truck's passenger seat that night, as the two were returning from a job they had completed earlier in the day.  (Pl.'s Resp. to Strike at 1-2.)  Cohen and Dailey were the only two eyewitnesses to the accident.[5]  (*Id.* at 1.)

Although the backhoe had a maximum height of 12 1/2 feet when properly secured to its trailer, it somehow struck the overpass at Wayne Road, which has 14 feet of clearance.  (*Id.* at 2-3.)  After the impact, Plaintiff pulled his truck to the right shoulder of the freeway as soon as possible to check for damage to his equipment, the bridge and any trailing vehicles.  (*Id.* at 3.)

Plaintiff stopped his truck on the shoulder to the right of the white fog line, but Cohen testified that there were approximately two feet of space between the passenger side of the truck and the start of a grass berm where the paved shoulder stopped. (Cohen Dep., Pl.'s Ex. A at 129.)  Michigan State Police ("MSP") photographs from the scene indicate that the driver's side of the truck was less than one foot off the roadway

from Docket Nos. 41 and 48, as both parties make the same statement of facts in their subsequent motions related to partial summary judgment on the issue of comparative negligence.

[5]The Michigan State Police ("MSP") incident report includes two written statements from a third individual, Paul Bourlier, who was driving in the right middle lane and claims to have observed the incident as well. (MSP Report, Defs.' Strike Mot., Ex. C at 33-34.)  Neither party includes a deposition of Bourlier and, as noted above, Plaintiff claims that Cohen and Dailey were the only eyewitnesses.

itself, (Pl.'s Ex. E) and the side view mirror was hanging slightly into the roadway.  (Pl.'s Ex. T.)  Later, MSP accident reconstructionist, Sergeant Kevin Lucidi, measured the scene in detail and found that the rear of Plaintiff's truck was on the shoulder five inches to the right of the center of the fog line, a protrusion from the side of the backhoe was 3 1/2 inches right of the fog line's center point, and the truck's side view mirror extended 3 1/2 inches over the fog line and into the roadway.  (Lucidi Dep., Pl.'s Ex. D at 60-61.)

Plaintiff and Cohen exited the truck from their respective sides and met at the rear of the backhoe trailer.  Cohen estimates that they stayed behind the trailer for approximately five seconds and, finding no damage to their equipment, nor seeing any debris in the roadway or traffic accidents behind them, Plaintiff moved somewhat towards the front of his truck.  (Cohen Dep. at 49.)  At his deposition, Cohen testified that he could only see Plaintiff out of the corner of his eye, and was unable to determine whether Plaintiff got up on the trailer or walked alongside it.  (*Id.* at 56.)  The next thing Cohen saw and heard was a white truck in the first right lane that passed close alongside Plaintiff's truck and made an extremely loud noise.  Cohen did not believe that there was any contact between the vehicles.  (*Id.* at 58.)  This was the first time Cohen saw the white truck, (*Id.* at 57) which turned out to be Defendants' tractor trailer that Dailey was driving.  Cohen did not see Defendants' truck strike Plaintiff directly, but did see Plaintiff's torso fall to the ground near the rear wheels of the backhoe trailer.  (*Id.* at 59-60.)

This testimony differs somewhat from Cohen's written statement to MSP troopers at the scene, which indicated in part that "we both went to rear of trailer to look [for any damage or debris from hitting the bridge].  I remained at rear of trailer, Rick stepped out

4

on traffic side.  Traffic was trying to get over.  Rick never looked as he was stepping out

on traffic side."  (MSP Report, Defs.' Strike Mot., Ex. C at 32.)  In a verbal interview with

MSP trooper Lisa Lucio about an hour after the accident, Cohen stated that Plaintiff

> walked to the left of the trailer and started walking on the side closest to the
> road.  Cohen stated he started walking on right side of trailer when he heard
> a loud sound.  Cohen went to the other side of the trailer where Biegas was
> and saw he had been hit by a passing semi.  Cohen stated that he recalled
> Biegas had not looked back at traffic before [Cohen walked] on the right of
> the trailer.

(*Id.* at 11.)  A week after the accident, Trooper Lucio contacted Cohen for clarification of

some events regarding the accident, and Cohen stated that the last time he actually

saw Plaintiff was at the rear of the trailer, and "he did not notice [if Plaintiff looked

behind him before walking into the first lane], but had just assumed that Biegas did not

look."  (*Id.*)

Prior to the accident, Dailey was driving Defendants' truck in the far right lane of

eastbound I-96 at approximately 55-58 miles per hour at a distance of two truck lengths,

or about 150 feet, behind another tractor trailer.  (Dailey Dep., Pl.'s Ex. F at 50, 57.)

The speed limit for trucks on this part of I-96 is 55 miles per hour.  While it was getting

dark at the time of the accident and Dailey had his headlights on, there was still natural

light in the sky and "it was lit up pretty well."  (Dailey Dep. at 55.).

As with Cohen's recollection of what happened in the moments surrounding the

accident, Dailey's testimony is also somewhat inconsistent between his initial

statements to the police at the scene and his subsequent deposition testimony.  Two

hours after the accident, Dailey made a written statement, saying that

> a dump truck and trailer was stranded partly in the right lane (which I was in).
> I had not much time to react and slowed down and steered to the left–I hit

5

something and did not know a person was involved–after I got stopped[6] a witness stopped in front of me and said that he thought a person was hit . . . .

(MSP Report at 31.)  Trooper Lucio also interviewed Dailey that night as part of her investigation, and she indicates that Dailey "said that he was driving in the first lane and he saw a person that was–looked to be in his lane, and he tried to move over but he couldn't, and believed that he hit a body, hit a person."  (Lucio Dep., Pl.'s Ex. G at 16.)

At his deposition nine months later, Dailey testified that he saw Plaintiff's truck, backhoe and trailer on the shoulder, and some part of this equipment was in the right lane of the roadway.  (Dailey Dep. at 52-53, 59.)  He never saw Plaintiff around the truck, however.  (*Id.* at 51, 59.)  Since Dailey was traveling approximately 150 feet behind the tractor trailer in front of him, the first time he was able to see Plaintiff's vehicle on the shoulder was when the preceding truck had passed it.  (*Id.* at 58.)  There were cars in the lane immediately to Dailey's left that kept him from swerving once he saw Plaintiff's truck, so Dailey stated that "I took my foot off of the gas pedal and veered to the left as much as I could which couldn't have been over eight inches maybe."  (*Id.* at 59.)  Dailey reiterated that he never saw a person, but did hear something hit the right side view mirror of his truck.  (*Id.* at 60-61.)  He then pulled off the roadway onto the right shoulder and returned to the accident scene.  (*Id.* at 62-63.)  The truck driving in front of Dailey apparently passed Plaintiff's vehicle safely and did not stop.

As a result of his accident reconstruction analysis, Sergeant Lucidi testified that

---

[6]Apparently, Dailey means something to the effect of "after I was able to get my truck stopped," as there is no dispute that he immediately pulled over to the right shoulder on his own once he felt the impact of the accident.

the contact between Defendants' and Plaintiff's trucks consisted of: (1) Defendants' right

side view mirror hitting the rear of Plaintiff's dump truck, as evidenced by a red paint

transfer on the mirror arm, and (2) Defendants' trailer scraping against a protrusion from

the backhoe, confirmed by metal shavings left behind on Plaintiff's trailer and a

corresponding scrape on Defendants' white trailer.[7]  (Lucidi Dep. at 88.)  This later

contact started halfway back on Defendants' trailer and continued for the rest of its

remaining length.  This evidence confirms that Defendants' truck was at least 3 1/2

inches onto the shoulder when it struck Plaintiff's truck and backhoe.

## II.  STANDARDS OF REVIEW

### A.  Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the

sufficiency of a Complaint. In a light most favorable to Plaintiff, the court must assume

that Plaintiff's factual allegations are true and determine whether the Complaint states a

valid claim for relief. *See Albright v. Oliver*, 510 U.S. 266 (1994); *Bower v. Federal

Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996); *Forest v. United States Postal Serv.*, 97

F.3d 137, 139 (6th Cir. 1996).

This standard of review "'requires more than the bare assertion of legal

conclusions.'" *In re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir. 1997)

(quoting *Columbia Natural Resources, Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir.

1995)). The Complaint must include direct or indirect allegations "respecting all the

material elements to sustain a recovery under *some* viable legal theory." *See In re

---

[7]Although Plaintiff's right side view mirror was within the roadway, it was not hit
during the accident.  (Lucidi Dep. at 113.)

7

*DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citations omitted). A court should not grant a 12(b)(6) motion unless the movant shows "beyond doubt that the plaintiff can prove no set of facts in support of his claim." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### B. Motion for Summary Judgment

Summary judgment is appropriate only when there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there

8

must be evidence on which the jury could reasonably find for the non-moving party.

*Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III.  ANALYSIS

### A.  Gross Negligence is no Longer a Common Law Tort in Michigan

Prior to the Michigan Supreme Court's abandonment of the contributory negligence doctrine in *Placek v. Sterling Heights*, 275 N.W.2d 511 (Mich. 1979), Michigan law recognized a number of exceptions to that general rule in an attempt to mitigate its harshness, as a plaintiff found to be the slightest bit negligent could not recover for his damages.  While called by different names, including gross negligence, "discovered negligence, subsequent negligence, wanton or willful or reckless negligence, discovered peril, [the] last clear chance doctrine, and the humanitarian rule," *Gibbard v. Cursan*, 196 N.W. 398, 401 (Mich. 1923), the common purpose of this particular exception was to provide for the plaintiff's recovery in a situation where the defendant acted negligently subsequent to the plaintiff.  *Jennings v. Southwood*, 521 N.W.2d 230, 232 (Mich. 1994).  While the term gross negligence may imply a higher degree of negligence on behalf of a defendant, the *Jennings* court noted that this concept "is merely ordinary negligence of the defendant that follows the negligence of the plaintiff."  *Id.*

In *Jennings*, the Michigan Supreme Court held that its adoption of comparative negligence in *Placek* eliminated the potential hardship to plaintiffs under the former contributory negligence regime, and thus negated any further need for the common law gross negligence concept.  *Id.* at 233.  The court recognized, however, that a number of statutory provisions under Michigan law exculpate certain actors for mere negligent

9

conduct, but allow recovery when that conduct reaches a grossly negligent level.[8]  *Id.* at

234.  In those limited situations, the gross negligence concept remains a viable part of

Michigan law.

Plaintiff's attempts to circumvent the clear language of the *Jennings* opinion are

unavailing.  First, Michigan Civil Jury Instructions 14.10, 14.11 and 14.12 do retain the

concept of gross negligence, but the notes on use and comments to these sections

plainly indicate that after *Jennings* they only apply in certain statutory contexts, such as

the EMSA.  Plaintiff does not argue that any such statutes are applicable here.  Second,

the two cases that Plaintiff cites are distinguishable.  *Hawkins v. Ranch Rudolf, Inc.*, No.

254771, 2005 WL 2372008 at *4 (Mich. Ct. App. Sept. 27, 2005), involved a situation

where the plaintiffs signed a release prior to going horseback riding that waived liability

for ordinary negligence.  Since such a waiver does not apply to gross negligence, the

situation in *Hawkins* is comparable to the statutory circumstances where the gross

negligence issue survives *Jennings*.[9]  Similarly, *Thomas v. CSX Transportation, Inc.*,

No. 208311, 1999 WL 33432173 at *1 (Mich. Ct. App. Nov. 2, 1999), involved the duty

owed to a trespasser, which requires active, as opposed to ordinary, negligence on

behalf of the defendant in order for the plaintiff to recover.  The instant case also does

not involve these types of legal theories where a party's gross negligence is material to

---

[8]*See, e.g.*, the Emergency Medical Services Act, Mich. Comp. Laws §
333.20965(1) (requiring gross negligence before certain emergency services providers
can be held liable for their acts or omissions); the Government Tort Liability Act, Mich.
Comp. Laws § 691.1407(2)(c) (same result for certain government employees).

[9]A case decided on a similar theory is *Lamp v. Reynolds*, 645 N.W.2d 311, 314
(Mich. Ct. App. 2002).

a finding of liability.  Therefore, Plaintiff's allegations of gross negligence fall under the common law definition of that term, and no longer constitute a viable claim under Michigan law following *Jennings*.  For this reason, Defendants' motion to dismiss is GRANTED and Plaintiff's claims are DISMISSED to the extent that they rest on a common law theory of gross negligence.

### B.  Dailey was not Criminally Reckless as a Matter of Law

Defendants also argue that they are entitled to summary judgment on the issue of Dailey's alleged recklessness in connection with the accident.  In relevant part, Plaintiff's Complaint states as follows: "[Defendants] were negligent and/or grossly negligent, including but not limited to:  a.  Driving the semi-truck in a reckless manner in violation of MCL § 257.626 . . . ."  (Compl. ¶ 13(a).)  In turn, that statutory provision provides:

> Reckless driving upon highway . . . in disregard of safety of persons or property
>
> Sec. 626.  (1) A person who drives a vehicle upon a highway . . . in willful or wanton disregard for the safety of persons or property is guilty of reckless driving.
>
> (2) A person who violates subsection (1) is guilty of a misdemeanor punishable by imprisonment for not more than 93 days or a fine of not more than $500.00, or both.

Mich. Comp. Laws § 257.626.

Wanton conduct constitutes "such indifference to whether harm will result as to be the equivalent of a willingness that it does."  *Pavlov v. Comm. Emergency Med. Serv., Inc.*, 491 N.W.2d 874, 877 (Mich. Ct. App. 1992) (quoting *Burnett v. City of Adrian*, 326 N.W.2d 810 (Mich. 1982)).  On these facts, a reasonable jury could not find that Dailey acted with wilful or wanton disregard for the safety of others since he was driving, at

11

most, three miles per hour over the speed limit and was traveling 150 feet behind the truck he was following.  As Defendants note, there is no evidence that Dailey was under the influence of alcohol or drugs, nor that he was driving with too little rest in violation of federal transportation regulations.  While Dailey's negligence is debatable, his conduct did not rise to the level necessary to be found guilty of reckless driving, so Defendant is entitled to summary judgment on the portion of Plaintiff's claims that rest upon a violation of Mich. Comp. Laws § 257.626.

### C. Comparative Negligence

Defendants' partial motion for summary judgment argues that, even taken in a light most favorable to Plaintiff, the facts on the record lead to a conclusion that Dailey's degree of fault in this accident was something less than 50% as a matter of law.  The issue arises because of an exception to the normal rules of Michigan's no-fault insurance law.  In general, a plaintiff may still recover in tort for noneconomic damages arising from a motor vehicle accident where the victim died, "except that damages shall not be assessed in favor of a party who is more than 50% at fault."  Mich. Comp. Laws § 500.3135(2)(b).

### 1. Relative fault can be an appropriate issue for summary judgment

Plaintiff argues that "[u]nder subsection (2)(b), the jury must be allowed to make the comparative fault assessment.  Only if a party (here, Plaintiff's decedent) is found to be more than 50 percent at fault by the jury does the judge intervene and enter an award of no damages."  (Pl.'s Resp. to Summ. J. at 3.)  Plaintiff does not cite any cases to support this position, nor does the face of the statute indicate this result.  In fact, Plaintiff's argument on this point is completely refuted by language in one of its own

12

cited cases on this issue, where the Michigan Court of Appeals noted that "[t]he standards for determining the comparative negligence of a plaintiff are the same as those of a defendant-the jury must consider the nature of the conduct and its causal relationship to the damages-and the question is one for the jury *unless all reasonable minds could not differ.*" *Sullivan v. Little*, No. 261518, 2005 WL 1750635 at *1 (Mich. Ct. App. July 26, 2005) (emphasis added). *Accord Huggins v. Scripter*, 669 N.W.2d 813 (Mich. 2003). Therefore, Plaintiff's initial argument that the comparative fault analysis is within the exclusive purview of a jury is baseless.

### 2. Presumption of negligence based upon statutory violations

Once a party is shown to have violated a state statute, Michigan law provides for a rebuttable presumption that the party was negligent without reaching the issue of standard of care. *Klanseck v. Anderson Sales & Service, Inc.*, 393 N.W.2d 356, 360 (Mich. 1986). It is within this Court's discretion whether to presume negligence based upon a statutory violation, and the party seeking to establish a presumption must show "1. the statute is intended to protect against the result of the violation; 2. the plaintiff is within the class intended to be protected by the statute; and 3. the evidence will support a finding that the violation was a proximate contributing cause of the occurrence." *Id.* Plaintiff and Defendants cite a number of alleged violations of Michigan traffic laws and other commercial driving standards by the other side in an attempt to establish the opposing party's negligence. (Compl. ¶¶ 13(a)-(e); Defs.' Summ. J. Mot. ¶¶ 5(a), (c) and (f).) The Court will now address Dailey's and Plaintiff's decedent's respective negligence in this case.

### 3. Dailey's alleged negligence

13

Plaintiff argues that Dailey was negligent in the following ways: (1) allowing his truck to cross the fog line onto the shoulder, (2) following too close to the preceding vehicle, and (3) driving too fast. Plaintiff claims that the latter two factors resulted in Dailey not being able to see Plaintiff's decedent and his equipment soon enough to avoid hitting Biegas. Plaintiff also posits that Dailey's violations of Mich. Comp. Laws §§ 257.626b and 257.627 create a presumption of negligence here, and the Court will consider these alleged statutory violations first.

Mich. Comp. Laws § 257.626b provides that "[a] person who operates a vehicle upon a highway . . . in a careless or negligent manner likely to endanger any person or property, but without wantonness or recklessness, is responsible for a civil infraction." The Court declines to find that this statute creates a presumption of negligence, however, because its wording merely states the same legal issues that arise in the normal standard of care analysis. Thus, using § 257.626b to establish Dailey's negligence would be superfluous because it would still be necessary to determine if he was negligent in order to conclude that he violated the statute.

Secondly, Plaintiff claims that Dailey's admission that he was traveling up to three miles per hour over the posted speed limit violated Mich. Comp. Laws § 257.627. For purposes of deciding the instant motions, the Court is willing to assume that Dailey was negligent for traveling over the posted speed limit.

Finally, Plaintiff asserts that Dailey was also negligent for following too close to the preceding truck and failing to see Plaintiff's decedent in time to take corrective action. Michigan law states:

A person operating a vehicle on a highway shall operate that vehicle at a

14

careful and prudent speed not greater than nor less than is reasonable and
proper, having due regard to the traffic, surface, and width of the highway
and of any other condition then existing. A person shall not operate a vehicle
upon a highway at a speed greater than that which will permit a stop within
the assured, clear distance ahead.

Mich. Comp. Laws § 257.627(1). This provision would also entail an analysis of

whether Dailey was acting in a "reasonable and proper" manner prior to determining if

he should be presumed negligent for following too close and not maintaining a sufficient

lookout for others. Again, it is not necessary to engage in that duplicate analysis. The

Court will now assess Dailey's other actions in light of whether he could be found

negligent under standard common law principles.

Defendants' truck struck parts of the dump truck and backhoe that were to the

right of the fog line. As a reasonable juror could find that a driver was negligent for

failing to keep his vehicle within the roadway boundary, Dailey was negligent in this

regard for purposes of the instant motions.

In terms of following too close to a preceding vehicle, Plaintiff points to the

Michigan Commercial Driver License Manual, which indicates that, at the speed Dailey

was traveling, he should have maintained a space of 600 feet between his truck and the

one in front of him. (Pl.'s Ex. M at 2-23.) In actuality, Dailey was only 150 feet behind

the other truck. Furthermore, Plaintiff's three experts opine that Dailey was solely

responsible for the accident because it was Dailey who sideswiped Plaintiff's decedent

and his truck, and Dailey would have been able to avoid the accident entirely by moving

over one lane had he seen the truck on the shoulder or Biegas in the right lane of traffic

15

sooner.[10]  (Robbins Aff., Pl.'s Ex. K at 3; Abbo Aff., Pl.'s Ex. L at 7; Asa Report, Pl.'s Ex. U at 4.)  On the other hand, Trooper Lucio stated that she thought Dailey "didn't have much of an out to avoid hitting Mr. Biegas," (Lucio Dep. at 64) and Sergeant Lucido testified that a 150 foot gap between Defendants' truck and the one preceding it was sufficient here, as well as his belief that excessive speed was not a factor in this accident.  (Lucido Dep. at 19, 80.)  Regardless, the summary judgment standard requires that this Court construe all evidence in a light most favorable to Plaintiff at this stage of the proceedings, so the expert testimony that Dailey was negligent by following too close to the preceding vehicle and driving too fast are sufficient to create a disputed issue of material fact on this issue.

In summary, Dailey is presumed to be negligent for speeding and the Court finds sufficient evidence that he was also negligent for crossing the fog line and following too close to the truck in front of him.

### 4.  Plaintiff's decedent's alleged negligence

Defendants argue that Plaintiff's decedent was negligent in the following ways: (1) failing to properly secure the backhoe, (2) stopping on the shoulder of I-96 rather than exiting the freeway and inspecting his equipment in a safer location, (3) not pulling farther to the right of the freeway's shoulder, (4) failing to put out emergency cones, triangles or flares, and (5) failing to exercise care for his own safety by walking in the travel lane of the freeway without looking for oncoming traffic.  Again, the Court will

---

[10]Plaintiff also argues that even if Dailey could not fully exit the eleven-foot-wide lane, he could have at least moved his eight-foot-wide truck to the lane's far left edge, leaving three feet between his truck and Plaintiff's decedent's vehicle.

16

consider Defendants' arguments of statutory violations first before moving on to the regular negligence analysis.

Defendants assert that Plaintiff's decedent violated Mich. Comp. Laws § 257.675(1), which states "a vehicle stopped or parked upon a highway or street shall be stopped or parked with the wheels of the vehicle parallel to the roadway and within 12 inches of any curb existing at the right of the vehicle." Here, Biegas parked within inches of the fog line while several feet of space remained to his right before the grass berm began. This law is designed to protect other motorists on a public highway, such as Dailey, and the location of Plaintiff's decedent's truck so close to the roadway itself was clearly a proximate cause of this accident. Therefore, the Court concludes that the violation of § 257.675(1) raises a presumption that Plaintiff's decedent was negligent, regardless of Plaintiff's argument that her decedent was lawfully parked because his truck was fully off the freeway's traffic lane.

Defendants also contend that Plaintiff's decedent was negligent for impeding the natural flow of traffic in violation of Mich. Comp. Laws § 257.676b, which provides:

> A person, without authority, shall not block, obstruct, impede, or otherwise interfere with the normal flow of vehicular or pedestrian traffic upon a public street or highway in this state, by means of a barricade, object, or device, or with his or her person. This section shall not apply to persons maintaining, rearranging, or constructing public utility facilities in or adjacent to a street or highway.

In accordance with the discretion afforded this Court under *Klanseck*, the Court declines to find that the violation of this statute raises a presumption of negligence in this case. The language of § 257.676b indicates that it is designed to protect other drivers from impediments in the roadway that would affect traffic flow, but these facts do not suggest

17

that Plaintiff's decedent's presence in the roadway led to that result here.  If anything, Dailey did not see Biegas until the last minute when he tried to swerve and miss the truck, so traffic was not impeded under the facts of this case and the Court concludes that it would not be proper to presume negligence based upon this statute.

Moving to allegations of common law negligence, Defendants first argue that a failure to properly secure the backhoe was the primary cause of this accident.  Although Defendants spend over four pages of their brief in support of the motion for summary judgment on this issue, the Court does not see how this action is relevant to the instant dispute because it was not a proximate cause of the decedent's death.  To be sure, this deficiency was a cause *in fact* of the accident, in that but for the backhoe striking the Wayne Road overpass Plaintiff's decedent would never have been in the precise location where he was killed at the time Dailey drove past in Defendants' truck, but it was not a proximate cause under the factual record present here.[11]

Also without merit is Defendants' argument that Plaintiff's decedent's failure to exit the freeway before stopping to check for damages constituted negligence.  Evidence of the weakness of this position is the fact that Defendants' employee Dailey did the *exact same thing* as Plaintiff's decedent when Dailey felt an impact with the right side view mirror of his truck.  This reaction indicates that Biegas did not act negligently by immediately pulling onto the shoulder in order to check for damage to his own

---

[11]Had the backhoe fallen off the trailer or otherwise disabled Plaintiff's decedent's truck after hitting the overpass and this resulted in his inability to pull the vehicle fully to the right of the shoulder, his failure to secure might constitute probable cause.  There is no evidence on the record to suggest that Plaintiff's decedent was in any way unable to pull his vehicle farther over on the shoulder, however.

18

equipment, especially in light of the fact that striking the bridge presented a risk to other trailing vehicles in addition to his own.

Similarly, Defendants' argument that Plaintiff's decedent's failure to deploy emergency markers or wear a reflective vest when leaving the truck is unavailing under these factual circumstances.  Cohen's deposition testimony indicated that he and Biegas exited the truck once it stopped on the shoulder, met at the back of the trailer to check for damages to their equipment and other vehicles, and, seeing none, Plaintiff's decedent apparently moved back towards the front of his truck immediately before the fatal collision.  These actions likely took place in a matter of seconds, certainly no more than a minute, and Defendants admit that the Michigan Commercial Driver License Manual does not require the placement of emergency equipment until a vehicle has been stopped on the shoulder for as long as *ten* minutes.  (Defs.' Summ. J. Mot., Ex. K at 2-19 (emphasis added).)  Given the extreme nature of the initial bridge collision here and the risk that posed to other traffic, it is unconvincing to argue that Plaintiff's decedent was negligent in not immediately deploying his emergency devices prior to looking for damage to the bridge and other vehicles.

This leaves the issue of walking in the traffic lane of a freeway while oncoming traffic was present.  Such an action constitutes negligent behavior, as any young driver obtaining a learner's permit, much less an experienced man like Biegas who possessed a commercial driver's license, can appreciate the necessity of looking for other vehicles before entering a busy highway on foot.[12]

---

[12]Although the Court has already presumed that Biegas was negligent for failing to pull farther off the freeway in violation of Mich. Comp. Laws § 257.675(1), the same

19

Even though no witness testimony specifically states that Plaintiff's decedent was walking in the roadway itself, no reasonable person could come to any other conclusion on the factual record present here. The MSP report and incident photographs indicate that Plaintiff's decedent's truck was within inches of the fog line. Obviously, if Plaintiff's decedent was walking to the left of his truck, at least part of his body would have been in the right traffic lane, as no person's body could fit in such a small space. Plaintiff indicates that Biegas was standing on the ground at the time of the accident, as she argues that "whether Biegas was inside the fog line, straddling the fog line or standing at the edge of the far right travel lane become irrelevant. No matter where he was, he was going to be fatally pinched between and killed by Defendants' truck when it struck the legally parked dump truck and trailer."[13] (Pl.'s Resp. to Summ. J. at 7.) Although this argument could be read to infer that Plaintiff's decedent might have been completely to the right of the fog line if he had remained behind his trailer at the moment of impact, the facts of this case could not support such a finding. First of all, Defendants' truck merely sideswiped the dump truck and trailer and continued down the road until Dailey pulled over to the shoulder himself. There is no evidence that any contact was made with the rear end of the backhoe trailer, and only the right side view mirror of Defendants' truck struck the back of the dump truck as it went by. Therefore,

---

point could be made with regards to his action of parking so close to the traffic lane.

[13]Cohen's deposition testimony indicated that because he could only see Plaintiff's decedent out of the corner of his eye in the moment before the accident, he could not tell whether Biegas was moving forward on the left side of the trailer or if he had climbed up on the trailer itself. All of the other evidence refutes this possibility, and Plaintiff does not argue that it is what actually happened here.

20

in order for Biegas to be "pinched between" the two trucks, he must have been walking on the left of his trailer at least partially in the right lane of the freeway.  Placing himself in such a position was negligent.[14]

To conclude, Plaintiff's decedent is presumed to have acted negligently for not leaving more room between his vehicle and the fog line, and the Court finds, for purposes of the instant motion, that he was also negligent for walking out into the freeway without adequately taking account of oncoming traffic.

### 5.  Dailey's fault in the accident was something less than 50%

Contrary to Plaintiff's experts' opinions, there is evidence to suggest that both Dailey and Plaintiff's decedent were negligent to some extent in causing this fatal accident.  As noted in *Sullivan*, weighing conflicting evidence of negligence in apportioning relative fault of the parties in a negligence action is typically a question of fact for the jury, "unless all reasonable minds could not differ."  2005 WL 1750635 at *1. The Court recognizes that balancing evidence is typically precluded on a motion for summary judgment under Rule 56, but a determination of relative fault necessarily involves weighing the negligence of the parties here.  In order to grant Defendants' motion, the Court must be convinced that no reasonable jury could find that Dailey was at least 50% at fault in this accident.

To support her argument that the facts of this case must be heard by a jury, Plaintiff cites to a number of unpublished Michigan Court of Appeals cases finding that a grant of summary judgment for the defendant in each of those cases would have been

---

[14]Both Sergeant Lucidi and Trooper Lucio reach the same conclusion.  (Lucidi Dep. at 21; Lucio Dep. at 30.)

improper.[15]

In *Sullivan*, 2005 WL 1750635 at *1, the defendant struck an intoxicated pedestrian who was walking in the roadway at night.  Evidence indicated that it was rainy out and the victim was six feet from the curb when hit, but that the defendant was going between 42 and 55 miles per hour in a 35 mile per hour zone.  Furthermore, questions existed as to how hard the rain was, whether bright lights of an oncoming car affected the defendant's viewpoint, and whether the victim's clothes were light or dark. In light of these unresolved facts, the trial court properly denied the defendant's motion for summary judgment on the issue of comparative negligence.  *Id.* at 2-3.

*Ruhig v. Orbaczewski*, No. 223312, 2001 WL 793888 at *1 (Mich. Ct. App. July 13, 2001), concerned an accident where the parties disputed whether the plaintiff might have failed to yield for the defendant, and whether the defendant's lights were on. Similarly, *Henderson v. Michigan Consol. Gas Co.*, No. 251224, 2005 WL 473986 at *1 (Mich. Ct. App. March 1, 2005), involved a case where one of the defendant's employees allegedly sped through an intersection at 40 miles per hour in a 25 mile per hour zone, colliding with the plaintiff's car coming at a high rate of speed in a perpendicular direction.  Neither car was subject to a traffic control device, meaning that the defendant's employee technically had the right of way according to the court.  Still, he had a duty to take reasonable precautions to avoid the plaintiff once he noticed that vehicle, and the fact that the defendant's employee might have been speeding would

---

[15]The Court need not address Plaintiff's citation to *Perkovic v. Brown*, No. 235699, 2002 WL 31930788 at *1 (Mich. Ct. App. Nov. 15, 2002), as the Michigan Supreme Court reversed that case.  *See Perkovic v. Brown*, 670 N.W.2d 670 (Mich. 2003).

have forfeited his right of way to the intersection.  *Id.* at *2.  Both of these cases contained disputed issues of material facts, so granting summary judgment on the issue of relative fault was improper in each, according to the Michigan Court of Appeals.

A key distinguishing fact between the instant case and *Sullivan* and *Henderson* is that Dailey was either going at the speed limit or slightly above on a dry day when there was still some natural light in the sky.  So, a key factor that weighed in favor of the defendant's negligence in either of those cases is not present here.  In addition, all of the above cases involved a number of factual questions, such as the relative locations of the vehicles involved in those accidents and which driver had the right of way at the time.  Here, however, the facts clearly establish the locations of Defendants' truck, Plaintiff's decedent's equipment, and Biegas himself.  That said, Dailey may have been traveling too close to the preceding truck and he was negligent by allowing his tractor trailer to pass over the fog line and onto the shoulder, so these factors militate towards there being an issue of material fact regarding the relative degrees of fault between Dailey and Biegas in this case.

It is inescapable, however, that Plaintiff's decedent's negligence was the greater cause of this accident, as he made two overriding mistakes that led to his death.  First, he parked a truck within inches of the fog line on the shoulder of a busy interstate highway when there is no evidence that his vehicle was disabled or could otherwise not have made it to the remaining two feet of paved shoulder at its right.  Even if Biegas did not intend to walk along the driver's side of his truck, simply parking the vehicle in this location dramatically increased the risk of a collision with someone traveling in the far right lane.  Then, the evidence shows that Plaintiff's decedent must have walked into

23

the roadway in front of oncoming traffic without first looking to see that it was clear for him to do so.  In light of such serious errors by Plaintiff's decedent, no reasonable juror could find that Dailey's actions of driving up to three miles per hour over the speed limit, being 150 feet behind a preceding truck, and drifting several inches over the fog line accounted for at least 50% of the fault for this accident.

This should not be read to suggest that the Court believes that Dailey was not a contributing cause of this accident as a matter of law.  Clearly, that is a disputed issue of material fact at this stage of the proceedings.  All that this Court concludes is that no reasonable person could find that Dailey's actions made him at least 50% responsible for the decedent's death.  For that reason, the Court GRANTS Defendants' partial motion for summary judgment on the issue of comparative negligence, meaning that Plaintiff is not entitled to any noneconomic damages as a result of this accident under Michigan law.

## IV.  CONCLUSION

Being fully advised in the premises, having read the pleadings, and for the reasons set forth above, the Court hereby orders that Defendants' motions to dismiss and for partial summary judgment are GRANTED in their entirety.  Plaintiff no longer has any claims based upon gross negligence or reckless conduct, and is not entitled to noneconomic damages arising out of the decedent's death.

SO ORDERED.

24

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  March 20, 2007

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 20, 2007, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager